***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties through the Pre-trial Agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties at all relevant times.
3. The employer was insured (or self-insured) for workers' compensation coverage at all relevant times.
4. Plaintiff's average weekly wage may be determined by a Form 22. A Form 22 for 1997-98 was received into evidence at the hearing before the Deputy Commissioner as Stipulated Exhibit 1. A Form 22 for 1998-99 was submitted post-hearing and received into evidence.
5. Plaintiff alleges injury to his back on the following dates:
(a) Oct. 28, 1998 (I.C. file no. 962470);
(b) Dec. 15, 1998 (I.C. file no. 962495);
(c) Aug. 2, 1999 (I.C. file no. 962494).
6. Defendants deny the compensability of these alleged injuries, and have paid some medical bills only with regard to the alleged injury of October 1998.
7. The deposition testimony of Richard Weiss, M.D., Samuel Chewning, M.D., and David Arpin, M.D is a part of the evidentiary record.
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows
FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff who was born on November 18, 1954 was 45 years old. Plaintiff completed high school and several years at Western Carolina University, but he did not obtain a college degree.
2. Defendant-employer produces parts for heavy equipment such as turbo parts and fan drives. Plaintiff began working for defendant-employer on October 17, 1997. Plaintiff's job involved heavy lifting, as well as twisting and turning. Plaintiff lifted large baskets of parts weighing approximately 50 to 60 pounds and placed them into a wash machine for cleansing. After the wash cycle completed in about 5 to 6 minutes, plaintiff lifted the basket out of the machine and placed the parts on a buggy. Plaintiff then repeated the process with a new basket of parts.
3. On or about October 28, 1998, plaintiff was washing parts and as he was bending and lifting a basket of parts, he felt a burning sensation in his back. Plaintiff reported this to his team leader, John Moore. Plaintiff was not asked to complete any forms at that time, and a written report was not given to human resources until around November 12, 1998.
4. Plaintiff did not receive immediate medical attention but was seen at St. Joseph Urgent Care on November 12, 1998 at which time he complained of a back injury at work 3 weeks prior. Plaintiff was diagnosed with a lumbo-sacral sprain and treated with pain medicines and a back brace. Plaintiff was removed from work for about 2 days and then placed on light duty.
5. Thereafter, plaintiff sought treatment from chiropractor David Arpin on November 16, 1998. Plaintiff had seen Dr. Arpin for a lumbar sprain in May and June of 1992 but had not treated with Dr. Arpin since that time. On November 16, 1998, plaintiff told Dr. Arpin that he had experienced back pain after lifting a heavy metal basket at work. Dr. Arpin treated plaintiff with spinal manipulation and physical therapy.
6. Plaintiff experienced flare-ups of back pain in December 1998 and returned to see chiropractor David Arpin on December 14, 1998. At that time, plaintiff related to Dr. Arpin that he had hurt himself again at work. Dr. Arpin treated plaintiff on December 14, 15 and 18, 1998.
7. On December 13 and 15, 1998, plaintiff was seen at St. Joseph Urgent Care. He reported that he was experiencing pain in his lower back which radiated into his left thigh. On December 13, 1998, plaintiff indicated that he woke up with back pain. The notes of December 15, 1998 indicate that plaintiff had no new injury. The greater weight of the evidence fails to establish a specific incident at a cognizable time which caused injury around December 13-15, 1998 but rather demonstrates that plaintiff's back pain, which began with the accident of October 1998, was now being aggravated by his ongoing work, which required heavy lifting.
8. At some point after the aggravation of his back pain in December 1998, plaintiff was transferred to the operation of a different machine, a "Tacco" induction hardener. Rather than lifting baskets of parts, plaintiff would lift one part at a time and place them into a machine. This required standing and either a lot of twisting or shuffling of his feet. This position was a production job, where plaintiff could be lifting up to 100 parts per hour.
9. In late July or early August 1999, plaintiff traveled to Daytona Beach, Florida for a family vacation and sat riding in a car for about 9 hours which aggravated his back pain. Therefore, on August 2, 1999, plaintiff returned to see Dr. Arpin with complaints of recurring lower back pain. The next day, plaintiff saw Dr. Arpin again and reported that his back pain had improved.
10. After returning from vacation around August 3, 1999, plaintiff aggravated his back condition while performing heavy lifting at work when he was lifting parts at the "Tacco" machine and experienced increased pain in his lower back.
11. The next day, August 4, 1999, plaintiff's back pain had worsened and he sought treatment at St. Joseph's Urgent Care at which time he mentioned both his 9-hour drive from Daytona Beach and the fact that he did heavy lifting at work.
12. The testimony of plaintiff's supervisor, John Moore, demonstrates that plaintiff did report his back injuries on at least two occasions. However, Mr. Moore was vague and did not clearly recall the dates that plaintiff had reported these injuries. The greater weight of the evidence indicates that the two injuries reported to Mr. Moore were the injuries of October 1998 and August 1999.
13. Plaintiff's initial injury of October 1998 was also reported to Linda Stewart, the employer's human resources coordinator around November 12, 1998 when John Moore gave her an accident report which resulted in plaintiff being sent to St. Joseph's Urgent Care.
14. Although the medical records do not mention work-related accidents on plaintiff's initial August 1999 visits to the chiropractor and to St. Joseph's Urgent Care, the records from St. Joseph's do mention that plaintiff did heavy lifting at work. This discrepancy is not determinative. Based upon the greater weight of the evidence of record including plaintiff's demeanor and presentation as observed by the Deputy Commissioner and the testimony of other employees indicating plaintiff timely reported his work-related back injuries, plaintiff's testimony regarding the incidents is credible.
15. As a result of his August 1999 visit to St. Joseph Urgent Care, plaintiff was referred for an MRI of his lumbar spine and to Dr. Richard Weiss, a neurosurgeon. Dr. Weiss first saw plaintiff on August 25, 1999. The MRI results showed a herniated disc at L5-S1 with a free floating disc fragment. Therefore, Dr. Weiss recommended surgery as soon as possible.
16. On September 3, 1999, Dr. Weiss performed a microlumbar diskectomy, in which he removed the herniated disk. Following the surgery, plaintiff had good relief of his leg pain, though he continued to experience lower back pain. According to Dr. Weiss, plaintiff's back injury, and specifically the herniated disc, is related to his work. Most likely the disc herniation occurred as a consequence of the August 1999 incident.
17. Dr. Weiss kept plaintiff out of work because he felt that plaintiff could not perform his prior job, which required heavy lifting. Due to plaintiff's ongoing back pain, Dr. Weiss ordered a repeat MRI, which was performed on April 5, 2000 and revealed evidence of a small disk protrusion or recurrent herniation at L5-S1.
18. Dr. Weiss initially rated plaintiff with a permanent impairment of ten percent to his spine on February 7, 2000. However, after reviewing the MRI results and learning of the recurrent disc herniation, on May 8, 2000, Dr. Weiss revised his rating and assessed plaintiff with a fifteen percent disability.
19. A recurrent disc herniation is a possible complication of back surgery. Plaintiff may be a candidate for further surgery, but at this time, he has elected not to pursue such surgery.
20. Dr. Samuel Chewning, an orthopaedic specialist, performed an independent medical examination of plaintiff. Although Dr. Chewning was somewhat vague in his responses to deposition questions, his overall testimony indicates that plaintiff's back injury is consistent with the history plaintiff gave him regarding his work-related incidents.
21. The greater weight of the evidence establishes that prior to his initial accident of October 1998, plaintiff did not suffer from ongoing or disabling back problems. The injury by accident by specific traumatic incident on or about October 28, 1998 resulted in ongoing back problems, which never completely resolved and which were aggravated by plaintiff's job, which required consistent heavy lifting.
22. On or about August 3, 1999, plaintiff sustained further significant aggravation of the prior back injury, when he was lifting parts at work and experienced an increase in his pain. As a result of his back injury of October 1998, as aggravated by his lifting activities at work and the specific traumatic incident which occurred at work on or about August 3, 1999, plaintiff sustained a herniated disk at L5-S1, for which surgery was necessary.
23. On January 25, 2000, plaintiff participated in a functional capacity evaluation (FCE) at Mountain Neurological Center. The FCE, as well as the assessment of Dr. Weiss, show that plaintiff's main areas of limitation are stooping, bending or twisting. Plaintiff cannot perform heavy lifting. Overall, plaintiff is capable of performing work in the lower end of the medium physical demand level. Dr. Weiss found plaintiff capable of work consistent with the results of the FCE.
24. Unless plaintiff should elect further surgery, as of May 5, 2000, plaintiff had reached maximum medical improvement from his back injury. Plaintiff sustained a fifteen percent permanent impairment to his back due to his injury by accident of August 3, 1999.
25. Plaintiff has not returned to work for defendant-employer or any other employer since August 1999. During at least part of the time plaintiff has been out of work, he has been paid disability benefits under a plan funded solely by defendant-employer.
26. Although plaintiff is capable of performing work in the medium demand level as demonstrated on the FCE, he has made no attempt to return to gainful employment. The evidence fails to show that he is incapable of earning wages in any employment after he reached maximum medical improvement in May 2000.
27. Plaintiff's average weekly wage as of August 3, 1999 was $484.12.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following
 CONCLUSIONS OF LAW
1. On or about October 28, 1998, plaintiff sustained a specific traumatic incident arising out of and in the course of his employment with defendant-employer, which resulted in injury to his lower back. This injury was aggravated by plaintiff's subsequent job duties, which required heavy lifting. N.C. Gen. Stat. § 97-2(6).
2. On or about December 13 through 15, 1998, plaintiff experienced a flare-up of his back pain due to heavy lifting at work. The evidence fails to establish a specific incident which precipitated this flare-up of back pain. Rather the evidence indicates that this back pain was an ongoing problem related to the initial injury of October 1998, which was aggravated by the daily lifting requirements of plaintiff's employment. N.C. Gen. Stat. § 97-2(6).
3. On or about August 3, 1999, plaintiff sustained a specific traumatic incident arising out of and in the course of his employment with defendant-employer, which resulted in further injury to his lower back, a disc herniation at L5-S1. N.C. Gen. Stat. § 97-2(6).
4. Subject to N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to payment of all reasonably necessary medical expenses for so long as the same tend to effect a cure provide relief and lessen the period of plaintiff's disability and are related to plaintiff's injuries by accident of October 28, 1998 and August 3, 1999, including the medical expenses of December 1998, as they were causally related to the initial injury. N.C. Gen. Stat. §§ 97-2(19), 97-25.1 and 97-25.
5. As a result of his injuries of October 28, 1998 and August 3, 1999, plaintiff was unable to earn wages in the same or any other employment and was temporarily totally disabled and entitled to compensation benefits from August 4, 1999 through May 5, 2000, when he reached maximum medical improvement, subject to defendants' credit and reasonable attorney's fees. Plaintiff has failed to prove by the greater weight of the evidence that he sustained any diminished wage earning capacity thereafter. N.C. Gen. Stat. § 97-29.
6. Defendants are entitled to a credit for any amounts paid to plaintiff during his time pursuant to the employer-funded disability plan. N.C. Gen. Stat. § 97-42.
7. Plaintiff has reached maximum medical improvement from his back injury and retains a fifteen percent permanent impairment to his back for which he is entitled to compensation beginning on May 5, 2000 and continuing for 45 weeks, subject to a reasonable attorney's fee. N.C. Gen. Stat. § 97-31(23).
8. Plaintiff's average weekly wage of $484.12 yields a compensation rate of $322.76. N.C. Gen. Stat. § 97-2(5).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission adopts the holding of the Deputy Commissioner and enters the following
 AWARD
1. Subject to N.C. Gen. Stat. § 97-25.1, defendants shall pay all reasonably necessary medical expenses incurred by plaintiff for treatment as a result of plaintiff's injury by accident to his back of October 28, 1998 and the injury by accident to his back of August 3, 1999, including the treatment rendered in December 1998, and the treatment rendered by Dr. Arpin and Dr. Weiss for so long as such treatment tends to effect a cure, provide relief or lessen the period of plaintiff's disability.
2. Defendants shall pay plaintiff compensation at the rate of $322.76 per week beginning August 4, 1999 and continuing through May 5, 2000 as temporary total disability compensation, subject to defendants' credit and reasonable attorney's fees. Such benefits having accrued shall be paid in a lump sum.
3. Defendants shall pay plaintiff compensation at the rate of $322.76 per week beginning May 6, 2000 and continuing for 45 weeks for his fifteen percent permanent impairment of his back, subject to a reasonable attorney's fee. Such benefits having accrued shall be paid in a lump sum.
4. A reasonable attorney's fee of the compensation due plaintiff under this opinion and award is approved for plaintiff's counsel and shall be deducted from the lump sum due plaintiff and paid directly to his counsel.
5. Defendants shall pay the costs, including the expert witness fees previously approved, if not already paid, of $125 to Dr. Arpin and $300 to Dr. Weiss, as well as a fee of $250 to Dr. Samuel Chewning.
This the ___ day of December 2001.
 S/_________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/________________ RENE C. RIGGSBEE COMMISSIONER
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER